**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Minerva Sánchez-Rosa, et al.,<br><br>**Plaintiffs,**<br><br>vs.<br><br>Municipality of San Juan, et al.<br><br>**Defendants.** | **CIVIL NO:** 18-1558 (RAM) |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, District Judge

Pending before the Court are Defendants' *Motion for Summary Judgment* (Docket No. 112), Plaintiffs' *Motion for Partial Summary Judgment* (Docket No. 116), and *Plaintiffs' Motion to Invalidate Releases* (Docket No. 190).[1] For the reasons discussed below, Defendants' *Motion for Summary Judgment* at Docket No. 112 is **GRANTED IN PART** and **DENIED IN PART**; Plaintiffs' *Motion for Partial Summary Judgment* at Docket No. 116 is **DENIED**; and Plaintiffs' M*otion to Invalidate Releases* at Docket No. 190 is **DENIED**.

### I.    FACTUAL BACKGROUND

On August 9, 2018, plaintiffs Minerva Sánchez-Rosa, Moisés Díaz-Díaz, and Edgardo Alicea-Fuentes, individually and on behalf of other similarly situated employees (collectively "Plaintiffs"),

---

[1] The Court notes that Plaintiffs' *Motion to Toll the Statute of Limitations for Class Members who have not Opted in to the Class* (Docket No. 122) is also currently pending. The Court shall address Plaintiffs' requests for conditional class certification and tolling in a separate, forthcoming opinion.

filed the present *Class and Collective Action Complaint* against the Municipality of San Juan, Police Commissioner José Caldero in his official capacity, and Mayor Carmen Yulin-Cruz in her official capacity (collectively "Defendants" or the "Municipality") pursuant to the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. § 201 *et seq*. and Puerto Rico Wage Payment Statute, P.R. Laws Ann. tit. 21 § 4566; R.P. Laws. Ann. tit. 29 § 171. (Docket No. 1). Plaintiffs assert that they are law enforcement officers employed by the San Juan Municipal Police and that in the wake of Hurricanes Irma and Maria, they were required and/or allowed to work more than their scheduled time per work week without adequate reporting of their hours nor proper compensation. Id. ¶¶ 18, 23-24. Furthermore, Plaintiffs claim that Defendants failed to pay employees for their unused sick leave, 2017 Christmas bonus, and 2017 and 2018 summer bonuses in violation of both federal and Puerto Rico law. Id. ¶¶ 27-29. As a result, Plaintiffs argue that they are entitled to unpaid back wages, compensatory pay and liquidated damages. Id. ¶¶ 52, 55. A total of sixty-two (62) individuals have consented to "opt-in" as plaintiffs the present case. (Docket Nos. 8, 15, 16 and 62). Further, Plaintiffs have filed a *Motion to Toll the Statute of Limitations for Class Members who have not Opted In to the Class*. (Docket No. 122).

Defendants filed their *Answer to the Complaint* on September 25, 2018. (Docket No. 36). On September 3, 2019, Defendants filed

a *Motion for Summary Judgment* contending that the FLSA claims should be dismissed because all non-exempt employees that have opted-in signed releases and received payments approved by the Wage and Hours Division of the United States Department of Labor ("DOL"). (Docket Nos. 112 at 7-8 and 113). Moreover, Defendants argue that the Court should not exercise supplemental jurisdiction over the remaining state law claims. Id. at 9. Plaintiffs filed an *Opposition* to Defendants' *Summary Judgment* and statement of facts (Docket Nos. 153 and 154) and Defendants filed a *Reply* (Docket Nos. 176 and 178). Furthermore, Defendants filed a *Supplemental Opposing Statement of Material Facts*. (Docket No. 179).

On their part, Plaintiffs filed a *Motion for Partial Summary Judgment* as to liability alleging that there is no genuine issue of material fact that Defendants owe Plaintiffs outstanding wages pursuant to the FLSA. (Docket Nos. 116, 117 and 118). Defendants filed an *Opposition* (Docket No. 147 and 148) and Plaintiffs filed a *Reply* (Docket No. 175).

In addition to said dispositive motions, Plaintiffs also filed a *Motion to Toll the Statute* on September 11, 2019. (Docket No. 122). Subsequently, on February 3, 2020, Plaintiffs filed a *Motion to Invalidate Releases* on the grounds that: (1) Defendants allegedly abused the class action process; (2) the releases were not approved by the Court; (3) the releases are invalid because the DOL did not perform an audit; and (4) the releases are

inaccurate. (Docket No. 190). The Court issued an order instructing Defendants to file a response addressing Plaintiffs' arguments and specifying the DOL's supervision over the purported settlement, if any. (Docket No. 192). In compliance, Defendants filed an *Opposition* asserting the validity of the waivers, detailing the DOL's investigation and subsequent supervision of the settlement process, and arguing that Plaintiffs' claims were untimely. (Docket No. 193).

## II.   LEGAL STANDARD

A motion for summary judgment is governed by Fed. R. Civ. P. 56(a). This rule entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Mercado-Reyes v. City of Angels, Inc., 320 F. Supp. 3d 344, 347 (D.P.R. 2018) (quotation omitted). On the other hand, a fact is considered material "if it has the potential of determining the outcome of the litigation." Id.

The moving party has "the initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact' with definite and competent evidence." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Once this occurs, the burden shifts to the non-movant. The United States Court of Appeals for the First

Circuit ("First Circuit") has stated that a non-moving party must "with respect to each issue on which he has the burden of proof, […] demonstrate that a trier of fact reasonably could find in his favor." Woodward v. Emulex Corp., 714 F.3d 632, 637 (1st Cir. 2013) (quotation omitted).

While a Court will draw all reasonable inferences in favor of the non-movant, it will disregard unsupported or conclusory allegations. *See* Johnson v. Duxbury, Massachusetts, 2019 WL 3406537, at *2 (1st Cir. 2019). The United States Supreme Court has stated that the existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Scott v. Harris, 550 U.S. 372, 379 (2007) (quotation omitted). A court should review the record "as a whole," and "may not make credibility determinations or weigh the evidence" as that is a job for the jury. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000).

Finally, Local Rule 56 also governs summary judgment. *See* D.P.R. Civ. R. 56. Per the rule, a motion for summary judgment must include "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which […] there is no genuine issue of material fact to be tried." Id. A nonmoving party must then "admit, deny or qualify the facts supporting the motion […] by reference to each numbered paragraph of the moving party's statement of material facts." Id. The First Circuit has

highlighted that "[p]roperly supported facts […] shall be deemed
admitted unless controverted in the manner prescribed by the local
rule." Advanced Flexible Circuits, Inc. v. GE Sensing & Inspection
Techs. GmbH, 781 F.3d 510, 520 (1st Cir. 2015) (quotation omitted).
"[L]itigants ignore [those rules] at their peril". Gautier v.
Brennan, 2019 WL 2754673, at *2 (D.P.R. 2019) (quotation omitted).

### III. FINDINGS OF FACT

After analyzing the **totality** of the evidence on the record
and only crediting material facts that are properly supported by
a record citation and uncontroverted, the Court makes the following
findings of facts:[2]

1. Plaintiffs and Opt-ins were law enforcement officers
   employed by the Municipality. (Docket Nos. 113-2; 118-1 at
   22-135; 148 at 2-3).

2. Various municipal police officers worked overtime hours
   during the Emergency Period following the passing of
   Hurricanes Irma and Maria, lasting from September 9, 2017
   through March 17, 2018 (the "Emergency Period"). (Docket
   Nos. 113-1 ¶ 3; 118-1 at 22-135; and 148 at 3-4)

3. The Wage and Hours Division of the DOL initiated an
   investigation (Case 1844823) regarding the payment of the

---

[2] References to a Finding of Fact shall be cited as follows: (Fact ¶ _).

overtime hours worked by San Juan municipal officers during the Emergency Period. (Docket No. 113 ¶ 1).

4. On February 27, 2018, Assistant District Director Wanda Z. Lopez sent a letter via email notifying Hon. Mayor Carmen Yulin-Cruz that investigator Sylvia L. Quigley-Negrón ("Quigley") had been assigned the task of conducting an investigation of the Police and Public Security Department of the Municipality of San Juan under the FLSA and therefore had the authority to examine certain records, investigate and gather data. (Docket No. 179-2 at 1-2).

5. Quigley communicated on various occasions with the officers of the Municipality, particularly with Human Resources Director Marta Vera-Ramírez ("Ms. Vera-Ramírez"), to request the information needed for the investigation and would impose deadlines for compliance. (Docket No. 198-1 at 1-7).

6. As part of the investigation, the Municipality provided the DOL investigator with a spreadsheet containing its calculations regarding overtime hours worked by Municipal Police Officers as well as access to "*Estudia Conmigo*" the platform where the Municipality maintained time and attendance records of its officers. (Docket Nos. 179 ¶¶ 5-6 and 187-1 at 21-22).

7. As part of the investigation, the Municipality provided information and documents requested by the DOL regarding the hours worked by the municipal officers during the Emergency Period. (Docket Nos. 113 ¶ 2; 193-1).

8. Following the investigation, the DOL investigator prepared a "Summary of Unpaid Wages" (Form WH-56) dated August 15, 2018 detailing the amounts owed to 842 employees for overtime pay during the Emergency Period. (Docket Nos. 179 at 10 and 179-2 at 5-98).

9. The DOL approved the gross amounts payable to the municipal police officers and provided the Municipality with the corresponding release forms for said officers. (Docket No. 113 ¶ 5).

10. The DOL releases for Case 1844823 (Form WH-58, revised April, 2017), were titled "Receipt of Payment of Retroactive Salaries, Indemnification for Damages, Employment Benefits and Other Compensation," dated August 16, 2018, and included the following language regarding the waiver of claims:

> NOTICE FOR THE EMPLOYEE: Your acceptance of this payment of salaries and/or other compensation that corresponds to you pursuant to the FLSA or the FMLA based on the conclusions of the WHD means that you have waived the right to file a complaint on your behalf for the payment of said minimum salaries or compensations for overtime not paid for the period of time indicated above and for an equivalent amount in concept of the indemnification for damages, plus legal costs and procedural costs pursuant to article 16(b) of the FLSA or Article

107 of the FMLA. Generally a complaint for salaries or other compensation not paid, including the indemnification for damages, must be filed within two years after which the FLSA or the FMLA have not been fulfilled. Do not sign this receipt unless you have truly received this payment for the amount indicated above.

[…]

**I understand that my signature on this receipt and resignation attests that I have truly received the payment of the amount previously indicated for the salaries, indemnification for damages or other compensation that correspond to me and that I waive my right to file a complaint as is described above and that covers the period previously indicated.**

(Docket Nos. 113 ¶ 6; 134-1; 134-2; 124-3).

11. Of the sixty-two (62) named Plaintiffs and Opt-ins, at least fifty-eight (58) were non-exempt police officers employed by the Municipality of San Juan during the time relevant to the *Complaint* and as such, received a DOL release. (Docket Nos. 113-2; 134-1; 134-2; 134-2; and 148 at 2-3).

12. The following thirty-seven (37) officers signed a DOL release, Form WH-58, for Case 1844823: (1) Edgardo Alicea-Fuentes (Docket No. 134-1 at 1-3); (2) Loyda Ayala-Marrero, Id. at 7-9; (3) Ruth Betancourt-Rivera, Id. at 11-13; (4) Linda Bonilla-Santana, Id. at 11-13; (5) Ángel Burgos-Curcío, Id. at 19-21; (6) Antonio Carrasquillo-González, Id. at 27-29; (7) Manuel Castro-Isaac, Id. at 31-33; (8) José Cintrón-Núñez, Id. at 35-37; (9) Raúl Collazo-Rodríguez, Id. at 39-41; (10) Mabel Diana-Guerra, Id. at

47-49; (11) Christian García-Arroyo, <u>Id.</u> at 59-61; (12) Heriberto Gómez-De Jesús, <u>Id.</u> at 67-69; (13) Jeannette González-Nieves, <u>Id.</u> at 75-77; (14) Víctor Irrizary-Sierra, <u>Id.</u> at 83-85; (15) Albine Marrero-Quintana (Docket No. 134-2 at 4-6); (16) Hiram Martinez-Morales, <u>Id.</u> at 7-9; (17) Mariluz Martis-Correa, <u>Id.</u> at 10-13; (18) Christian Matos-Rosario, <u>Id.</u> at 14-16 ; (19) Julio Meléndez-Alméstica, <u>Id.</u> at 17-19; (20) John Muñoz-Hernández, <u>Id.</u> at 23-25; (21) Tamara Nieves-Román, <u>Id.</u> at 26-28; (22) Juan Padua-Cruz,[3] <u>Id.</u> at 47-49; (23) Carlos Perea-Chévere, <u>Id.</u> at 53-55; (24) Edwin Reyes-López (Docket No. 134-3 at 1-3); (25) Juan Román-Ortiz, <u>Id.</u> at 10-12; (26) Richard Rosario-Reyes, <u>Id.</u> at 13-15; (27) Carlos Sáez-Maldonado, <u>Id.</u> at 16-18; (28) Minerva Sánchez-Rosa, <u>Id.</u> at 19-21; (29) Andrés Santana-Torres, <u>Id.</u> at 22-24; (30) Jermari Serrano-Borreo, <u>Id.</u> at 25-27; (31) Orlando Silva-Sevilla, <u>Id.</u> at 28-30; (32) José Tapia-Osorio, <u>Id.</u> at 31-33; (33) Tito Torres-Caraballo, <u>Id.</u> at 34-36; (34) Héctor Torres-Rivera, <u>Id.</u> at 37-39; (35) Luis Torres-Serrano, <u>Id.</u> at 40-42; (36) Leandro Ureña-Esteves, <u>Id.</u> at 43-45; (37) and Luis Vázquez-Román, <u>Id.</u> at 46-48.

13. The following six (6) officers received a release but **did not sign** it: (1) Melvin Berrios-Rivera, (Docket No. 134-1

---

[3] The Court notes that Juan Padua-Cruz added a note by hand to the release stating "The date does not agree with the time paid." (Docket No. 134-2 at 49).

at 4-6); (2) Guillermo E. De Jesús-Pérez, Id. at 43-45; (3) Michael González-Maldonado, Id. at 71-73; (4) Charlie Lugo-Rivera (Docket No. 134-2 at 1-3); (5) Melisa Pérez-Salgado, Id. at 50-52; and (6) Ana Quiñones-Trinidad, Id. at 56-58.

14. On the other hand, there were sixteen (16) officers that either signed, initialed, or wrote their name on a release but also included a note indicating that they did not agree with its contents:

(1) Roberto Capestany-Díaz signed the release and added a note stating: "[t]his payment does not correspond to the dates established in this document. It is stated that yours truly will not waive his right which this document requests that I sign." (Docket No. 134-1 at 23-25);

(2) Moisés Díaz-Díaz wrote his name on the signature line, wrote on top of the text of the release to specify that he had **"NOT"** received the payment, and included a note stating that "[t]here is an active complaint for the same." Id. at 51-53;

(3) William Figueroa-Contes signed the release and added a note stating: "I do not waive filing a complaint or taking a legal action for the payment of my extra and/or compulsory hours." Id. at 55-57;

(4)   José García-Mojica signed the release and wrote a note
      stating: "[t]he payment does not correspond to the
      dates stipulated and I sign against my will since I was
      coerced to sign so they would give me the payment (or
      check)." Id. at 63-65.

(5)   Luis González-Pérez signed the release and wrote a note
      stating: "I sign against my will understanding that I
      am being coerced and my rights violated." Id. 79-81;

(6)   Yeseira Lazzú-López signed the release and added a note
      stating "I do not waive filing a complaint and/or taking
      legal action for the payment of my overtime and/or
      compensation; and I state that the gross amount that
      this document reflects is not the same as that of the
      check." Id. at 87-89;

(7)   Ana Muñoz-Hernández signed the release and wrote a note
      stating: "I do not waive filing a complaint and/or
      taking legal action for the payment of my extra hours
      and/or compensation and I state that the gross amount
      indicated in this document is not the same as
      established in the check." (Docket No. 134-2 at 20-22).

(8)   Cynthia Nieves-Soto signed the release and wrote a note
      stating: "I am not in agreement with what is contained
      in this document. With the signature of the same I am

not accepting what is contained in (illegible)." <u>Id.</u>
29-31;

(9)  Arcadio Núñez-Del Valle signed the release and wrote a
     note stating: "I am not in agreement with what is stated
     above." <u>Id.</u> at 32-34;

(10) Boris Ojeda-Filomeno signed the release and wrote a
     note stating: "I sign against my will understanding
     that it is not the correct amount and understanding my
     rights are being coerced and violated." <u>Id.</u> at 35-37;

(11) Luis Ortiz-Rodríguez signed a release and wrote a note
     stating: "I do not waive filing a complaint or taking
     legal action for the payment of my overtime and/or
     compensation." <u>Id.</u> at 38-40;

(12) Luis Otero-Rivera signed a release and wrote a note
     stating: "I do not waive the process of claim since the
     amount is not correct." <u>Id.</u> at 41-43.

(13) Héctor Padilla-Tapia signed a release and wrote a note
     stating: "I am not in agreement with what is mentioned
     above or what (two illegible words) and I sign this
     document since it is obligatory for the delivery of the
     check." <u>Id.</u> at 44-46;

(14) Omar Reyes-Rodríguez signed a release and wrote a note
     stating: "I sign this document against my will

> understanding that I have been coerced and my rights
> violated." (Docket No. 134-3 at 4-6).
>
> (15) Eloy Rivera-Hernández signed a release and wrote a note
>      stating: "I do not waive filing a complaint or taking
>      legal action for the payment of my overtime hours and/or
>      compensation." Id. at 7-9

15. The Municipality has issued various payments to municipal
    police officers, including those that have not opted-in,
    for overtime hours worked during specific instances within
    the Emergency Period. (Docket Nos. 118-1 at 136-137 and
    148-2 ¶¶ 11-14).

16. On January 30, 2019, the DOL notified the Municipality,
    via Ms. Vera-Ramírez, that it had not complied with its
    obligation to pay back wages to various employees pursuant
    to Case 18444823 and required proof of payment.
    Subsequently, the DOL also sent various follow-up
    communications reiterating the request. (Docket No. 193-1
    at 16-19).

17. On March 4, 15, and 28, 2019, the Municipality, via Mr.
    Valentín Cruz-Pérez, submitted to the DOL proof of payment
    for a total of sixty-five (65) employees for the DOL to
    review. (Docket Nos. 193-2; 193-3; 193-4; 193-5; 193-6;
    193-7; and 193-8; and 193-9 at 6).

18. On August 21, 2019, DOL investigator Quigley sent an email to the Municipality requesting evidence of payment for missing employees, as soon as possible. That same day, the Municipality sent an updated excel table with evidence of payment in response. (Docket No. 198-1 at 12-13).

19. Per Defendants, as of September 3, 2019 the following ten (10) officers were still owed a portion of their payment pursuant to the releases:

> (1)  Ángel Burgos-Curcío: $645.29 (Docket Nos. 112 at 8 and 113 ¶ 12).

> (2)  Raúl Collazo-Rodríguez: $25.94, (Docket No. 113 ¶ 17).

> (3)  José A. García-Mojica: $29.20, Id. ¶ 23.

> (4)  Michael González-Maldonado: $8.46, Id. ¶ 25.

> (5)  Christian Matos-Rosario: $3.13, Id. ¶ 34.

> (6)  Ana Muñoz-Hernández: $5.64, Id. ¶ 36.

> (7)  John Muñoz-Hernández: $2.09, Id. ¶ 37.

> (8)  Luis Otero-Rivera: $347.26, Id. ¶ 43.

> (9)  Minerva Sánchez-Rosa: $14.63, Id. ¶ 55.

> (10) Andrés Santana-Torres: $642.85, Id. ¶ 56.

20. On November 13, 2019, Milagros Murphy, Director of Federal Affairs in charge of the claims of FEMA for the expenses of labor and work of the Public Assistance Program associated with Hurricanes Irma and María certified that as of that date, there existed a balance pending payment

of $1,709.57 to the following eight (8) officers who appear as Plaintiffs or Opt-ins in the present case:

(1) Ángel Burgos-Curcío: $86.87

(2) Raúl Collazo-Rodríguez: $24.03

(3) Ana Muñoz-Hernández: $167.35

(4) Luis Otero-Rivera: $303.85

(5) Minerva Sánchez-Rosa: $365.06

(6) Andrés Santana-Torres: $311.40

(7) Melissa Pérez-Salgado: $225.09

(8) Ana M. Quiñones-Trinidad: $225.92

(Docket No. 148-4 at 1-2).

21. Subsequently, Defendants have made the following payments:

(1) Ángel Burgos-Curcío: The Municipality issued gross payments of $86.87 on December 30, 2019 and $558.42 on January 30, 2020. (Docket No. 179-3 at 1-3);

(2) Raúl Collazo-Rodríguez: The Municipality issued gross payments of $24.03 on January 15, 2019 and $1.91 on January 30, 2020 (Docket Nos. 148-3 and 179-3 at 4-5);

(3) José A. García-Mojica: The Municipality issued a gross payment of $29.20 on January 30, 2020. (Docket No. 179-3 at 6-7);

(4)   Michael González-Maldonado: The Municipality issued a gross payment of $8.46 on January 30, 2020. Id. at 8-9;

(5)   Christian Matos-Rosario: The Municipality issued a gross payment of $3.34 on January 30, 2020. Id. at 10;

(6)   Ana Muñoz-Hernández: The Municipality issued a gross payment of $167.35 on December 30, 2019. Id. at 11;

(7)   John Muñoz-Hernández: The Municipality issued a gross payment of $2.09 on January 30, 2020. Id. at 12-13;

(8)   Luis Otero-Rivera: The Municipality issued gross payments of $303.85 on December 30, 2019 and $43.41 on January 30, 2020. Id. at 14-16;

(9)   Melisa Pérez-Salgado: The Municipality issued a gross payment of $225.09 on December 30, 2019. Id. at 17;

(10)  Ana M. Quiñones-Trinidad: The Municipality issued a gross payment of $225.92 on December 30, 2019. Id. at 18;

(11)  Minerva Sánchez-Rosa: The Municipality issued a gross payment of $365.06 on December 30, 2019. Id. at 19;

(12)  Andrés Santana-Torres: The Municipality issued gross payments of $311.40 on December 30, 2019 and $331.45 on January 30, 2020. Id. at 20-22.

22. The Municipality issued payments to the officers regardless
   of whether they signed the DOL releases. (Docket No. 179 ¶
   16).

## IV.   ANALYSIS

### A. <u>**The Valid Waiver of FLSA Claims**</u>

Pursuant to the FLSA, non-exempt employees cannot be employed
"for a workweek longer than forty-hours […] unless such employee
receives compensation for [their] employment in excess of the hours
above specified at a rate not less than one and one-half times the
regular rate at which [they are] employed." 29 U.S.C.A. § 207
(a)(2). If an employer fails to do so, the Secretary of Labor (the
"Secretary") "is **authorized to supervise the payment** of […] the
unpaid overtime compensation" owed to any employee under Section
207. 29 U.S.C.A. § 216(c) (emphasis added). Furthermore, the Act
specifies that the "agreement of any employee to accept such
payment shall upon payment in full constitute a waiver by such
employee of any right [they] may have" to both unpaid overtime
compensation and liquidated damages. <u>Id.</u> In other words, "[s]imply
tendering a check and having the employee cash that check does not
constitute an 'agreement' to waive claims; an agreement must exist
independently of payment" and the "process must also be
supervise[d] by the DOL". <u>Beauford v. ActionLink</u>, LLC, 781 F.3d
396, 406 (8th Cir. 2015) (citing <u>Dent v. Cox Commc'ns Las Vegas,
Inc.</u>, 502 F.3d 1141, 1146 (9th Cir. 2007); 29 U.S.C. § 216(c)).

Notwithstanding the above, DOL supervision is not the *only* way to achieve a valid release of FLSA claims. Courts have routinely held that "the settlement of FLSA claims requires **either court approval or supervision by the United States Secretary of Labor** in order for employees' waiver of their rights through settlement to be binding." Curtis v. Scholarship Storage Inc., 2016 WL 3072247, at *2 (D. Me. 2016) (emphasis added). *See also* Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015) (holding that settling FLSA claims with prejudice requires the "approval of the district court or the [DOL] to take effect."); Singleton v. AT&T Mobility Servs., LLC, 146 F. Supp. 3d 258, 260 (D. Mass. 2015).

It is uncontested that Plaintiffs and Opt-ins worked overtime hours during the Emergency Period following hurricanes Irma and María and that the Municipality owed them compensation for said hours. (Facts ¶¶ 1-3). Despite this, it has also been proven that the Municipality issued DOL releases (Form WH-58) and corresponding payments to fifty-eight (58) of the named Plaintiffs and Opt-ins. (Facts ¶¶ 9-15, 21).

Defendants ground their request for summary judgment on the argument that the claims before the Court are barred by said waivers and payments. (Docket No. 112). On their part, Plaintiffs contend that summary judgment as to liability is proper because there is no controversy regarding the initial failure to pay

overtime and because the releases are unenforceable. (Docket No. 116). Further, Plaintiffs separately requested that the Court invalidate the releases. (Docket No. 190). Therefore, it is evident that the threshold issue is whether Plaintiffs and Opt-ins effectively waived their FLSA claims by signing the releases and/or receiving the payments issued by the Municipality.

Plaintiffs argue that the releases are invalid because: (1) the DOL did not perform an audit; (2) the releases did not include essential information; (3) the releases were not approved by the Court; and (4) Defendants abused the class action process. (Docket No. 190). None of these objections stand. Rather, an independent review of the releases shows that not all Plaintiffs and Opt-ins agreed to waive their FLSA claims:

   *i.   The DOL adequately supervised the waiver of FLSA claims*

   Relying solely on the Eleventh Circuit Court of Appeals' (the "Eleventh Circuit") Opinion in Niland v. Delta Recycling, Corp., Plaintiffs claim that the DOL must conduct an "audit" of time records, not merely an investigation. (Docket Nos. 190 at 3); *see also* Niland v. Delta Recycling, Corp., 377 F.3d 1244, 1247 (11th Cir. 2004). In Niland, the employer entered a "compliance partnership agreement" with the DOL by which they would "conduct a **voluntary self-audit** to determine overtime wage liabilities" and the "DOL would supervise the payment of any back wages." Niland, 377 F.3d at 1246. The Eleventh Circuit did not hold that the DOL

*must* conduct an audit in lieu of an investigation nor that a compliance partnership agreement is *always* required for a valid settlement. Instead, the <u>Niland</u> court found that by doing so, the DOL adequately supervised the payment of back wages in that case. <u>Id.</u> at 1248. Thus, the Court must determine if the DOL provided sufficient supervision of the waivers and corresponding payments, *not* whether the DOL conducted an audit.

Although the DOL "need not be intimately involved in every single decision," it must play a significant role, and be involved in the "post-investigation resolution process" for there to be adequate supervision. <u>Seelen v. Med Coach, LLC</u>, 2019 WL 5423370, at *2 (M.D. Fla. 2019) (citing <u>Niland</u>, 377 F.3d at 1247). Consequently, the mere existence of a DOL investigation does not constitute "'supervision' of payments sufficient to satisfy 29 U.S.C. § 216(c)." <u>Cables v. SMI Sec. Mgmt., Inc.</u>, 2012 WL 12863144, at *4 (S.D. Fla. 2012). Likewise, simply providing an employer with the amount of back wages owed via a Form WH-56 is equally insufficient supervision by the DOL under the FLSA. *See e.g.* <u>Lopez v. Real Monarca Inc.</u>, 2018 WL 1139056, at *2 (M.D. Fla. 2018) ("Here, there is no real evidence beyond the DOL's issuance of the WH-56 form to support a claim that the DOL supervised payment to [the employees]. Accordingly, the Court finds that the DOL did not supervise payment in this case.").

While there is no fixed standard for what constitutes sufficient supervision, the following Circuit Court of Appeals cases are illustrative of appropriate DOL intervention. For example, the DOL's "adequate" supervision in Niland included, in summary, the review and approval of the data and formulas used to calculate back wages; the approval of the language for the waivers; the tracking of payments; and handling questions from employees regarding accepting payments or how they were calculated. *See* Niland, 377 F.3d at 1246. In Sneed v. Sneed's Shipbuilding, Inc., the Fifth Circuit held that a DOL investigation in which the investigator determined the amount of back wages owed, presented a check to the employee on the employer's behalf and required that the employee sign a receipt waving his right to sue, constituted sufficient DOL supervision. *See* Sneed v. Sneed's Shipbuilding, Inc., 545 F.2d 537, 538-39 (5th Cir. 1977). Finally, the Seventh Circuit found in Walton v. United Consumers Club, Inc. that the DOL decision of sending "agreements explicitly releasing the right to sue" once the DOL "thinks it has achieved 'enough' for the employees […] and it requests [that employees] sign these forms if they wish to take the money" is "the kind of supervision that § 16(c) [now § 216(c)] contemplates." Walton v. United Consumers Club, Inc., 786 F.2d 303, 306 (7th Cir. 1986).

In the case at bar, after receiving the requested information and obtaining access to the Municipality's system for maintaining

work attendance records (Facts ¶¶ 4-7), the DOL: (1) revised the amounts calculated by the Municipality (Fact ¶ 9); (2) prepared a "Summary of Unpaid Wages" (Form WH-56) detailing the amount of back wages owed to officers (Fact ¶ 8); (3) provided the Municipality with the corresponding Form WH-58 releases (Fact ¶ 10); (4) and oversaw the payment process, imposed deadlines, and followed up repeatedly with Municipality officials and requiring proof of payment(Fact ¶¶ 16-18). The uncontested evidence shows that beyond conducting a proper investigation, the DOL "played a significant role in key tasks necessary to ensure employees received payment." *See* Seelen, 2019 WL 5423370, at *2 (internal quotations and edits omitted) (finding that there was sufficient DOL supervision because the DOL "provided specific instructions regarding: (1) the letter Defendant would send to employees; (2) the calculation and payment of the monies owed; (3) the deadlines for compliance; (4) the inclusion of the Form WH-58; and (5) proof that payments were made."). Thus, as in the above-referenced cases of Niland, Sneed, Walton and Seelen, the DOL adequately supervised the waiver of FLSA claims in the present case.

   *ii. The DOL Form WH-58 constitutes sufficient notice*

    Plaintiffs also posit that the releases were invalid because they did not include essential information such as: (1) the essence of claims being waived and (2) the employees' right to consult an

attorney. (Docket No. 190 at 4-5). The contested waivers consisted

of the DOL Form WH-58. (Fact ¶ 10). It is well established that:

> A WH-58 is a standard form used by the DOL to inform an
> employee that, although he has the right to file suit
> under 29 U.S.C. § 216(b), acceptance of the back wages
> offered will result in waiver of those rights. The DOL
> can either authorize an employer to use the WH-
> 58 *or* authorize other waiver language.

Niland, 377 F.3d at 1248. Accordingly, courts have repeatedly held

that the text of **a Form WH-58 release constitutes a sufficient**

**notice, and thus a valid waiver, under the FLSA.** *See* Seelen, 2019

WL 5423370, at *3 ("the language in the WH-58 form is sufficient

to establish notice that acceptance of payment constitutes waivers

of one's right to sue."); Blackwell v. United Drywall Supply*,* 362

Fed.Appx. 56, 58 (11th Cir. 2010) (agreeing with the district

court's conclusion that WH-58 "forms unambiguously informed

Plaintiffs that, if they cashed the checks provided with the forms,

they would be waiving their rights to sue for back pay.");

Zhengfang Liang v. Cafe Spice SB, Inc., 911 F. Supp. 2d 184, 198

(E.D.N.Y. 2012) (collecting cases); Lopez, 2018 WL 1139056, at *3

("A waiver statement can be either a Form WH-58 or other authorized

language."). Here, the releases did not just contain the required

standard language. Rather, the Municipality used *actual* Form WH-

58 releases issued by the DOL for Case 18444823. (Fact ¶ 10).

Therefore, Plaintiffs contention that the releases were

insufficient cannot stand.

> *iii. Court approval is not required when there is adequate*
>     *DOL supervision*

District court approval is undoubtedly one mechanism to
ensure the enforceability of a private settlement of FLSA claims.
However, the very cases cited by Plaintiffs maintain that a valid
FLSA waiver requires **either** DOL supervision **or** district court
approval. *See* Cheeks, 796 F.3d at 206 ("stipulated dismissals
settling FLSA claims with prejudice **require the approval of the
district court or the DOL to take effect**. Requiring **judicial or
DOL approval** of such settlements is consistent with what both the
Supreme Court and our Court have long recognized as the FLSA's
underlying purpose[.]") (emphasis added). Similarly, the Ninth
Circuit Court of Appeals determined that:

> There is no indication that Congress opposed DOL-
> supervised agreements regarding wages owed for a
> discrete time period, so long as all further claims—
> namely, liquidated damages, attorney's fees or costs—
> based on that period would be waived. Such an approach
> does not undermine Congress's interest in assuring the
> employer that all claims from that period had been
> addressed conclusively, and that the agreement would not
> be subject to second-guessing by the courts.

Dent v. Cox Commc'ns Las Vegas, Inc., 502 F.3d 1141, 1146 (9th
Cir. 2007).

Notably, the ruling in Fitzwater v. Cole, the other case cited
by Plaintiffs, was not that a district court must *always* be the
entity to approve the settlement of an FLSA claim, but rather that
plaintiffs presented sufficient evidence to "indicate a bona fide

dispute over whether the DOL Settlement Plaintiffs' validly waived their rights to participate in this lawsuit." Fitzwater v. Cole, 2019 WL 6270235, at *3 (S.D. Ala. 2019). Unlike in the case the bar where Plaintiffs and Opt-ins received a DOL approved Form WH-58 release (Fact ¶ 10), the plaintiffs in Fitzwater were simply "told to sign a folded piece of paper, confirming they had received a check and no one explained that it would give up her right to sue." Id. Plaintiffs have not provided, and the Court has not found, any binding First Circuit case law mandating district court approval of FLSA waivers *in addition* to DOL supervision.

   *iv.  Plaintiffs have not established that Defendants abused*
        *the class action process*

   Lastly, Plaintiffs argue that the releases are invalid because Defendants abused the class action process by communicating with Plaintiffs. The Court need not address this contention because Plaintiffs do not provide sufficient pleadings, any evidence, nor adequate "citations and supporting authorities" as required by Local Rule 7(a) to sustain this claim. *See* L. CV. R. 7(a).

**B. There are issues of material facts as to whether all Plaintiffs and/or Opt-ins waived their FLSA claims**

   As discussed above, in addition to sufficient DOL supervision and the use of Form WH-58, a valid waiver of FLSA claims requires: (1) the employee's agreement to accept a payment in exchange for a release and (2) the payment in full of the agreed amount. 29

U.S.C.A. § 216(c). *See also* <u>Beauford</u>, 781 F.3d at 406 (8th Cir. 2015)("Indeed, an employee may waive his rights to sue even if he does not cash a settlement check, provided that he signs a waiver of any legal claims and receives a valid check from the employer."); <u>Walton</u>, 786 F.2d at 305 ("Section 16(c) requires 'payment in full' of the agreed amount, not of the underlying claim."). Here, since filing their *Motion for Summary Judgment*, Defendants have provided evidence, which has not been objected, showing that all named Plaintiffs and Opt-ins have subsequently been **paid in full**, regardless of whether they signed a waiver. (Fact ¶ 21).

However, the evidence on the record (or lack thereof) also shows that **not all Plaintiffs and Opt-Ins agreed to sign a release**. In light of the completed payments, the Plaintiffs and/or Opt-ins in the case at bar can be divided into four (4) groups: (1) employees who signed a release; (2) employees who refused to sign a release; (3) employees who signed a release but added a note stating that they signed against their will or otherwise did not waive their rights; and (4) employees who have not been classified as non-exempt and for whom no release has been filed on the docket.

>    i.  *Employees who signed a release*

The thirty-seven (37) Plaintiffs and/or Opt-ins who signed a Form WH-58 release without an objection (Fact ¶ 12) and have been subsequently paid in full pursuant to said release (Facts ¶¶ 15,

21) have necessarily **waived their FLSA claims for back wages during the Emergency Period.** *See* 29 U.S.C.A. § 216(c). Accordingly, the FLSA claims for said employees are dismissed, and the Court need not extend supplemental jurisdiction over their remaining state-law claims.

   *ii.   Employees who refused to sign a release*

   On the contrary, despite receiving the DOL specified payments, the six (6) Plaintiffs and/or Opt-ins who refused to sign a release (Fact ¶ 13) have clearly not agreed to waive their FLSA claims within the context of the statute. For this reason, the summary judgment requested by Defendants as to these claims is not proper. (Docket No. 112).

   *iii.   Employees who allegedly signed against their will*

   The Court notes that fifteen (15) Plaintiffs and/or Opt-ins signed a release, and have been paid in full, but added a note stating that they did not waive their claims or were otherwise signing against their will. (Fact ¶ 14). Courts have found that a FLSA release is only effective where "'the employee's choice to waive his or her right to file private claims—that is, the employee's *agreement to* accept a settlement payment— [is] informed and meaningful.'" Anthony v. Concrete Supply Co., Inc., 241 F. Supp. 3d 1342, 1346 (N.D. Ga. 2017) (quoting Woods v. RHA/Tenn. Grp. Homes, Inc., 803 F.Supp.2d 789, 800 (M.D. Tenn. 2011)). In light of the notes, there exists a question of material fact as to

whether there was a *bona fide* waiver of FLSA claims by these fifteen (15) employees. Hence, summary judgment as to said Plaintiffs and/or Opt-ins is precluded. *See* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (holding that the Court cannot adjudicate a matter that would require "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" because these "are jury functions, not those of a judge").

    iv.  *Employees for whom there is no release filed*

    Defendants maintain that the following four (4) employees are exempt and have thus not shown if they received a waiver: (1) lieutenant Carlos M. Pizarro-Morales; (2) lieutenant Carlos Negrón-Avilés; (3) captain Elsa I. Pagán-Villafane; and (4) lieutenant Francisco J. García-Claudio. However, Defendants have not provided sufficient evidence to establish that these four (4) officers are exempt.[4] Plaintiffs correctly asserted that Defendants bear the burden of proving whether an employee is exempt. (Docket No. 153 at 7). *See* <u>Miranda-Albino v. Ferrero, Inc.</u>, 455 F. Supp. 2d 66, 73 (D.P.R. 2006) (citing <u>De Jesús-Rentas v. Baxter Pharmacy Servs. Corp.</u>, 400 F.3d 72, 74 (1st Cir. 2005)) ("The employer in

---

[4] Defendants only cite a Statement of Undisputed Material Facts at Docket No. 66 filed by Plaintiffs in a *different* FLSA litigation against the Municipality: <u>Clara Rosa Rivera, et al. v. Municipality of San Juan</u>, Civil Case No. 16-1465 (JAG). However, when ruling on said motion and its accompanying Motion for Summary Judgment at Docket No. 65, the Court in <u>Clara Rosa Rivera</u> held that it was unable to determine Plaintiffs' alleged non-exempt status. (Docket No. 128; Civil Case No. 16-1465).

an FLSA case bears the burden of proving an employee's exempt status."). Nevertheless, Plaintiffs have not pointed to any evidence to establish these employees' non-exempt status. Therefore, there remains a question of material fact as to whether said four (4) employees are non-exempt and if they waived their FLSA claims.

## V.   CONCLUSION

In accordance with the above, genuine issues of material fact preclude entry of summary judgment as to all Plaintiffs and/or Opt-ins, as requested by both Plaintiffs and Defendants. Accordingly, Defendants' Motion for Summary Judgment at Docket No. 112 is **GRANTED IN PART** and **DENIED IN PART**; Plaintiffs' *Motion for Partial Summary Judgment* at Docket No. 116 is **DENIED**; and Plaintiffs' M*otion to Invalidate Releases* at Docket No. 190 is **DENIED** for the reasons therein.

Given the existence of a valid waiver under the FLSA, the totality of the claims presented by the following thirty-seven (37) employees are hereby **DISMISSED WITH PREJUDICE**:

(1) Edgardo Alicea-Fuentes; (2) Loyda Ayala-Marrero; (3) Ruth Betancourt-Rivera; (4) Linda Bonilla-Santana; (5) Ángel Burgos-Curcío; (6) Antonio Carrasquillo-González; (7) Manuel Castro-Isaac; (8) José Cintrón-Núñez; (9) Raúl Collazo-Rodríguez; (10) Mabel Diana-Guerra; (11) Christian García-Arroyo; (12) Heriberto Gómez-De Jesús; (13) Jeannette González-Nieves; (14) Víctor Irrizary-Sierra; (15) Albine Marrero-Quintana; (16) Hiram Martinez-Morales; (17) Mariluz Martis-Correa; (18) Christian Matos-Rosario; (19) Julio Meléndez-Améstica; (20) John Muñoz-Hernández; (21) Tamara Nieves-Román;

(22) Juan Padua-Cruz; (23) Carlos Perea-Chévere; (24) Edwin Reyes-López; (25) Juan Román-Ortiz; (26) Richard Rosario-Reyes; (27) Carlos Sáez-Maldonado; (28) Minerva Sánchez-Rosa; (29) Andrés Santana-Torres; (30) Jermari Serrano-Borreo; (31) Orlando Silva-Sevilla; (32) José Tapia-Osorio; (33) Tito Torres-Caraballo; (34) Héctor Torres-Rivera; (35) Luis Torres-Serrano; (36) Leandro Ureña-Esteves; and (37) and Luis Vázquez-Román.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 30th day of September 2020.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge
